**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

EDGARDO MELENDEZ,

                                        Plaintiff,

        - v -                                                        Civ. No. 9:05-CV-1614
                                                                          (NAM/RFT)

DOCTOR LESTER N. WRIGHT, *Chief Medical Director*;
GLENN S. GOORD, *Commissioner*; MR. RAMINENI, *Doctor*;
SALLY BAXTER; DR. RABINOWITZ; KENNETH PERLMAN;
MAHNAZ SULLIVAN; EDWARD SOTTILE; and JOHN SUPPLE,

                                        Defendants.

**APPEARANCES:**                                        **OF COUNSEL:**

EDGARDO MELENDEZ
Plaintiff, *Pro se*
268771
Central New York Psychiatric Center
P.O. Box 300
Marcy, New York 13404

HON. ANDREW M. CUOMO                        SENTA B. SIUDA, ESQ.
Attorney General of the State of New York        Assistant Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Edgardo Melendez brought this civil rights action, pursuant to 42 U.S.C. §

1983, alleging Defendants displayed deliberate indifference to his serious medical needs when they,

individually and in concert, failed to treat his Hepatitis C condition.  Dkt. No. 7, Am. Compl.

Defendants filed a Motion for Summary Judgment, Dkt. No. 41, which Plaintiff opposes, Dkt. No.

47.  Based on the discussion below, it is recommended that Defendants' Motion be **granted** and this action be **dismissed.**

## I.  MATERIAL FACTS

Though Plaintiff opposes Defendants' Motion for Summary Judgment, he does not provide a response to the Defendants' Statement of Material Facts, nor does he include his own recitation of the facts.  Accordingly, the following facts, which do not otherwise appear controverted, are taken from the Defendants' Statement of Material Facts.  Dkt. No. 41-3, Defs.' 7.1 Statement; *see also* N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." (emphasis in original)).[1]

At issue in Plaintiff's Amended Complaint is the medical treatment he received, or did not receive, while incarcerated at Fishkill and Midstate Correctional Facilities.  Prior to entering the Department of Correctional Services (DOCS) custody in 2003, Plaintiff tested positive for Hepatitis C, a viral infection of the liver.  Defs.' 7.1 Statement at ¶ 3.  Plaintiff also suffers from other

---

[1] Plaintiff, like all litigants whether proceeding *pro se* or with representation, is charged with knowledge of the Local Rules of Practice.  Even if Plaintiff was not able to consult the Court's Local Rules, we note that included in Defendants' Motion for Summary Judgment is a "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion," which, based on the wording, should have alerted Plaintiff to his obligation to submit a response to the Statement of Material Facts and should have further notified him that should he fail to provide such statement of facts, "all material facts set forth in the statement filed and served by the defendant(s) shall be deemed admitted."  Dkt. No. 41-2.  In his opposition papers, Plaintiff cites the Court's refusal to appoint counsel and his many transfers to different facilities as the cause for his failure to adequately supply legal arguments in support of his claim.  We are mindful of the difficulties a *pro se* litigant faces in framing legal arguments, and every effort is made to construe such claims liberally to raise the best argument on Plaintiff's behalf.  However, we decline to endure the onus of scouring a record to assess whether a genuine issue of material fact exists; that obligation rests with the non-movant.  *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 91-92 (2d Cir. 2008); *Lee v. Alfonso*, 2004 WL 5477530, at * 4 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (noting that the courts in the Northern District "strictly apply" Local Rule 7.1(a)(3)), *aff'd unpub'l opin.* 112 Fed. Appx. 106  (2d Cir. 2004); *Fox v. Amtrak*, 2006 WL 395269,  at *1 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371-72 (N.D.N.Y. 2003) (Hurd, J.).

conditions including Gastroesophageal Reflux Disease, Type II Diabetes, Schizophrenia, and a history of intravenous drug use. *Id*. at ¶ 4; John Supple, M.D., Aff., dated Feb. 26, 2008, at ¶ 5.

Between September 2003 and February 2005, Plaintiff was housed in Fishkill. *Id*. at ¶ 2. While at Fishkill, Plaintiff was treated by a number of health care professionals, including, but not limited to, Defendants Mahnaz Sullivan, Edward Sottile, M.D., and John Supple, M.D. Plaintiff was then transferred and housed at Midstate between February 2005 through July 2006. *Id*. While at Midstate, Plaintiff was treated by a number of health professionals including, but not limited to, Defendants Ramineni, M.D., and Marvin Rabinowitz, M.D., who is a board-certified infectious disease specialist. *Id*. at ¶¶ 12 & 13.

At all times relevant to the Amended Complaint, DOCS had a "Hepatitis C Primary Care Practice Guideline" for treatment of inmates diagnosed with this disease. *Id*. at ¶ 24. Pharmacological treatment of Hepatitis C is centrally managed in DOCS in the Office of the Deputy Commissioner for Health Services. *Id*. at ¶ 24. Doctors at individual correctional facilities cannot prescribe the drug treatment regime on their own initiative. *Id*. Instead, Defendant Lester Wright, M.D., as DOCS Deputy Commissioner and Chief Medical Officer, has the sole authority to approve Hepatitis C treatment after it is recommended by a facility physician who demonstrates that the patient satisfies the standardized protocol. *Id*. at ¶¶ 18-19 & 23.

During his incarceration at Fishkill, Plaintiff was seen by the Defendants approximately twenty-six (26) times. Defs.' 7.1 Statement at ¶ 6. The medical staff at Fishkill monitored Plaintiff's Hepatitis C by drawing and testing Plaintiff's blood, specifically for Plaintiff's liver function, which was found to be slightly elevated during his stay at Fishkill. *Id*. at ¶ 7. Additionally, Plaintiff underwent liver biopsies in December 2003 and March 2004. *Id*. The first liver biopsy,

which occurred on December 18, 2003, returned inconclusive results. *Id*. at ¶ 8. Plaintiff underwent a second liver biopsy on March 24, 2004, using a less invasive procedure, the results of which indicated Plaintiff suffered from "mild chronic active Hepatitis C" with a fibrosis level of zero. *Id*. at ¶ 9. On July 15, 2004, after a follow-up visit, Defendant Sullivan corresponded with Defendant Wright to ascertain Plaintiff's eligibility for the Hepatitis C drug regimen. Dkt. No. 41-5, John Supple, M.D., Aff., dated Feb. 26, 2008, at ¶ 30. Dr. Wright explained that Plaintiff failed to qualify for treatment based on his fibrosis level of zero. Defs.' 7.1 Statement at ¶ 21. Specifically, Dr. Wright explained that Plaintiff had "Stage 0 (no fibrosis) on his liver biopsy. Treatment is NOT indicated in stage 0. Fibrosis is the only way to assess the progression of chronic hep c disease." Supple Aff., Ex. A at pp. A19-A20. Defendant Sullivan then counseled Plaintiff on the reason for the denied treatment and discussed with him the pros and cons of such treatment. Supple Aff. at ¶ 32. Medical staff at Fishkill continued to monitor Plaintiff's blood levels until his transfer to Midstate in February 2005. *Id*. at ¶¶ 33-38.

While at Midstate, Drs. Ramineni and Rabinowitz treated Plaintiff approximately eighteen (18) times, wherein his medical conditions were monitored through blood tests and regular check-ups. *Id*. at ¶¶ 14-15.

## II. DISCUSSION

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no

genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this

point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs.,*

*Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*,

the court must "read [his or her] supporting papers liberally, and . . .  interpret them to raise the

strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*,

*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations,

unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey*

*v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is

applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson*

*v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d

Cir. 2003)).  To state an Eighth Amendment claim for denial of adequate medical care, a prisoner

must demonstrate that prison officials acted with "deliberate indifference to serious medical needs."

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The plaintiff must allege conduct that is "'repugnant

to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark

the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970

F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).  This standard

contains both objective and subjective elements. *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir.

2003).  "The objective 'medical need' element measures the severity of the alleged deprivation,

while the subjective 'deliberative indifference' element ensures that the defendant prison official

acted with a sufficiently culpable state of mind." *Id.* at 183-84 (citing *Chance v. Armstrong*, 143

F.3d 698, 702 (2d Cir. 1998) & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  The

subjective element "entails something more than mere negligence . . . [but] something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result."

*Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

In the case at bar, we turn first to whether Plaintiff suffered from a serious medical illness

or injury under the Eighth Amendment.  *Smith v. Carpenter*, 316 F.3d at 184.  Some of the factors

that determine whether a prisoner's medical condition is serious include: "1) whether a reasonable

doctor or patient would perceive the medical need in question as important and worthy of comment

or treatment, 2) whether the medical condition significantly affects daily activities, and 3) the

existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003)

(internal quotation marks and citations omitted) (noting that an inmate is not required to show "that

he or she experiences pain that is at the limit of human ability to bear, nor [does the court] require

a showing that his or her condition will degenerate into a life threatening one").

We acknowledge that Hepatitis C is a serious medical condition, however, the Eighth

Amendment inquiry is not whether Hepatitis C is a serious medical disease, but rather, whether the

failure to treat the disease is sufficiently serious.  *Smith v. Carpenter*, 316 F.3d at 185.  As the

Second Circuit noted, it is the "particular risk of harm faced by a prisoner due to the challenged

deprivation of care, rather than the severity of the prisoner's underlying medical condition,

considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* at 186; *see also*

*Coderre v. Pesanti*, 186 Fed. Appx. 94 (2d Cir. 2006) (unpublished opinion upholding district

court's grant of summary judgment to defendants and quoting *Bender v. Regier*, 385 F.3d 1133,

1137 (8th Cir. 2004) for the proposition that although "[a hepatitis] infection is unquestionably a

-7-

serious problem, the Eighth Amendment issue is not whether the infection itself is a serious medical need, but rather whether [the prisoner] had a serious medical need for prompt interferon treatment." (alteration in original)); *Richardson v. Blanchette*, 2006 WL 496010, at *7 (D. Conn. Mar. 1, 2006) (noting that while Hepatitis C is a serious medical condition, the Eighth Amendment analysis is fact-specific, thus the proper inquiry is not whether plaintiff suffered from Hepatitis C, but rather, whether he should be provided any treatment until his diabetes was under control, as the defendant doctors determined).  In this regard, Plaintiff has failed to establish that his Hepatitis C condition, with stage zero fibrosis, was a condition so serious that delaying medical treatment in the form of a pharmacological regimen would could cause serious detrimental effects to Plaintiff's health, such as a degeneration of his condition or some other detrimental affect on his daily activities.  It appears, by Plaintiff's own account, that Plaintiff believes, though wrongly, that the medical treatment he sought is, in fact, a cure for the disease.  Dkt. No. 47 at p. 1 ("Plaintiff requested treatment with the cure, i.e. Interferon and Ribavarin drugs.").  However, according to Dr. Supple, there is no cure for Hepatitis C and, in some instances, the treatment sought by Plaintiff can be more detrimental than helpful.  Supple Aff. at ¶¶ 43 & 45; *see also* Wright Aff. at ¶ 8 (noting there is no cure for Hepatitis C) & Rabinowitz Aff. at ¶ 29 (noting that the Interferon and Ribavirin treatment is successful only 40% of the time and is very toxic with a lot of side effects).  Other than his avid and understandable desire to find a cure for his disease, Plaintiff has not indicated how the refusal to put him on this regimen affected his condition, let alone his day-to-day activities.  In sum, he has failed to establish that his condition was objectively serious.

Yet, even if this Court were to find that Plaintiff has established a serious medical need, we still would nonetheless find Defendants are entitled to summary judgment as the requisite culpable

state of mind on behalf of Defendants has not been established.   In establishing that Defendants

acted with deliberate indifference towards Plaintiff's serious medical injury, a prisoner must show

"more than an inadvertent failure to provide adequate medical care by prison officials[.]" *Smith v.*

*Carpenter*, 316 F.3d at 184 (internal quotation marks and citation omitted).  Prison officials act with

deliberate indifference "when [they] 'know[] of and disregard[] an excessive risk to inmate health

or safety; the official[s] must both be aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Chance v.*

*Armstrong*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837).

As the medical record and Defendants' Affidavits clearly denote, Defendants' treatment of

Plaintiff has been anything but deliberately indifferent.  As indicated above, Defendants Ramineni,

Rabinowitz, Sullivan, Sottile, and Supple saw Plaintiff a combined forty-four (44) times throughout

the three years at issue in this lawsuit.  Plaintiff's Hepatitis C condition was monitored through

blood tests and, when necessary, liver biopsies.  Plaintiff was also counseled on numerous occasions

regarding the course of treatment being pursued.  Plaintiff's other conditions were also treated by

Defendants.  Plaintiff's issue with the Defendants is not a wholesale failure to treat, but rather, a

failure to prescribe the particular course of treatment requested by Plaintiff.  At best, that amounts

to nothing more than a disagreement over the course of treatment, which is not actionable under the

Eighth Amendment. *Ifill v. Goord*, 2004 WL 1663994, at *3 (W.D.N.Y. Apr. 8, 2004) (citation

omitted).  We also note that the Defendant Doctors had no control over whether Plaintiff would be

provided the course of treatment requested as that decision lay solely within Dr. Wright's purview.

As Dr. Wright explained, Plaintiff's stage 0 fibrosis rendered him ineligible for the course of

treatment sought, as set forth in DOCS Primary Care Practice Guideline.  Furthermore, Dr. Wright

reviewed Plaintiff's medical history and results from the second liver biopsy and determined Plaintiff should not receive the more rigorous treatment.  Wright Aff. at ¶ 17.  Again, Plaintiff's arguments amount to nothing more than a

> disagreement[] between a prisoner and prison officials over treatment decisions [which] fall[s] short of cruel and unusual punishment.  Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a *section 1983* claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the *Eighth Amendment*.

*Id.* (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (emphasis in original)).[2]

Perhaps Plaintiff's claim is in opposition to DOCS' Hepatitis C Primary Care Practice Guideline, but, if so, he has yet to articulate what aspect of that policy he is challenging and what constitutional right it impinges.  Additionally, we must not lose sight of the fact that "prison officials and medical personnel have wide discretion in treating prisoners, and *Section 1983* is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons."  *Id.* (internal quotation marks and citation omitted) (emphasis in original).  In fact, if the medical treatment concerns "the care and safety of patients," then there is a "'presumption of correctness.'"  *Id.* (quoting *Perez v. County of Westchester*, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000)).  Given the level of fibrosis in Plaintiff's liver, which contraindicates the need for drugs, the substantial risk of side effects from

---

[2] When a prisoner is in essence claiming medical malpractice,

a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omission sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Estelle*, 429 U.S. at 106 & n.14).

If the malpractice involved "culpable recklessness, i.e., an act or failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of harm,'" then it may constitute deliberate indifference.  *Id.* (quoting *Farmer*, 114 S. Ct. at 1980).

*-10-*

the medication on a patient suffering from mental infirmities, as well as the fact that Plaintiff's condition was consistently monitored, it is clear that Defendants did not act with deliberate indifference when Plaintiff was denied the drug regimen to treat his Hepatitis C.

### C.  Personal Involvement

We still must address the other Defendants named in Plaintiff's Second Amended Complaint, namely Sally Baxter, Nurse at Midstate, Kenneth Perlman, Superintendent of Midstate, and Glenn Goord, DOCS Commissioner.  It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[I]t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983") (citations omitted).

First, with regard to Defendant Sally Baxter, the Court notes that not a single allegation of wrongdoing has been lodged against this Defendant, nor can we find any indication in the medical records that Defendant Baxter treated Plaintiff.  Thus, Defendant Baxter is not personally involved in any of Plaintiff's allegations of wrongdoing and should be **dismissed**.

Turning to the remaining Defendants, Perlman and Goord, Plaintiff has not asserted any specific actions taken to hold these Defendants personally liable.  In fact, it is quite clear from Plaintiff's Second Amended Complaint that he seeks to hold these Defendants liable solely by virtue

of their supervisory positions. Dkt. No. 7 at ¶¶ 40-41 (stating Defendants Perlman and Goord were liable by virtue of "superior respondeat").

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).

Since we have determined that no Eighth Amendment violation occurred, then it follows that no supervisory Defendants should be held liable.[3]

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment be **granted** and

---

[3] Because no constitutional violation has occurred, the Court will not review the Defendants' qualified immunity argument. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). We also note that Defendants raised the issue of Plaintiff's failure to exhaust as a ground for summary judgment. However, Defendants failed to raise this affirmative defense in their Answers and, thus, it is deemed waived. *Jones v. Bock*, 549 U.S. 199 (2007); *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994); *see also* FED. R. CIV. P. 8(c) & 12(b).

this action be **dismissed**; and it is further

      **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 29, 2008
        Albany, New York

                         RANDOLPH F. TREECE
                         United States Magistrate Judge

*-13-*